

FILED
DISTRICT COURT OF GUAM

OCT 01 2009

JEANNE G. QUINATA
CLERK OF COURT

ARTHUR B. CLARK, ESQ.
JAMES W. HOFMAN, II, ESQ.
CALVO & CLARK, LLP
Attorneys at Law
259 Martyr Street, Suite 100
Hagåtña, Guam 96910
Telephone No.: (671) 646-9355
Facsimile No.: (671) 646-9403

ARNE D. WAGNER, ESQ. (admitted *pro hac vice*)
DAWN R. PAYNE, ESQ. (admitted *pro hac vice*)
CALVO & CLARK, LLP
Attorneys at Law
One Lombard Street, Second Floor
San Francisco, CA 94110
Telephone No.: (415) 374-8370
Facsimile No.: (415) 374-8373

Attorneys for
*GMP Hawaii, Inc., dba GMP Associates,
and Ohio Pacific Tech, Inc.,
dba GMP Associates, Inc. and
Lexington Ins. Co.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT COURT OF GUAM

| | |
|---|---|
| MAEDA PACIFIC CORPORATION, a Guam corporation,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>GMP HAWAII, INC., et al.,<br><br>　　　　　　　Defendants.<br>―――――――――――――――<br>and Related Counter-Claims, Cross-Claims, and Third-Party Claims | CIVIL ACTION NO. 08-00012<br><br>**GMP ASSOCIATES' OPPOSITION TO JORGENSEN & CLOSE ASSOCIATES' MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ..................................................................1

II. STATEMENT OF FACTS ............................................................................................2

III. ARGUMENT.................................................................................................................4

    A. The Court Should Deny or Continue Jorgensen's Motion for Summary Judgment against Maeda and GMP under FRCP 56(f) .....................................4

    B. Reaching the Merits on Jorgensen's Motion Violates GMP's Due Process Rights ..................................................................................................................6

    C. Jorgensen's Motion Violates the Principle of Judicial Economy .......................7

    D. Jorgensen Is not Entitled to a Judgment on the Basis of Smithbridge's "Settlement" with Maeda..................................................................................8

IV. CONCLUSION.............................................................................................................9

# TABLE OF AUTHORITIES

## Cases

*Commercial U. Ins. Co. v. Ford Motor Co.*
　640 F.2d 210 (9th Cir. 1981) .................................................................................... 9

*Cont'l Mar. v. Pac. Coast Metal Trades*
　817 F.2d 1391 (9th Cir.1987) .................................................................................. 4

*F.T.C. v. Neovi, Inc.*
　2008 WL 131361 (S.D. Cal. 2008) .......................................................................... 6

*Family Home & Fin. Ctr. Inc. v. Fed. Home Loan Mortgage Corp.*
　525 F.3d 822 (9th Cir.2008) ................................................................................ 4, 5

*Federated Dept. Stores Inc. v. Moitie*
　452 U.S. 394 (1981) ................................................................................................. 7

*Gomez-Vigil v. I.N.S.*
　990 F.2d 1111 (9th Cir. 1993) ................................................................................. 6

*Peabody Coal Co. v. Greer*
　62 F.3d 801 (6th Cir. 1995) ................................................................................. 6, 7

*Preaseau v. Prudential Ins. Co. of America*
　591 F.2d 74 (9th Cir. 1979) ..................................................................................... 7

*Stearns Airport Equipment Co., Inc. v. FMC Corp.*
　170 F.3d 518 (5th Cir. 1999) ................................................................................... 6

*Tech-Bilt, Inc. v. Woodward-Clyde & Associates*
　38 Cal.3d 488 (1985) ............................................................................................... 9

*Washington v. Allstate Ins. Co.*
　901 F.2d 1281 (5th Cir. 1990) ................................................................................. 5

## Statutes

7 G.C.A.
　§ 24601 .................................................................................................................... 1
　§ 24602 .................................................................................................................... 6
　§ 24606 ................................................................................................................. 1, 9

## Other Authorities

10A Wright, Miller, and Kane, *Federal Practice and Procedure*
§ 2740 (1983) ............................................................................................................. 5

## Rules

Federal Rules of Civil Procedure
Rule 56(e) ................................................................................................................. 5
Rule 56(f) ..................................................................................................... 2, 4, 5, 6, 10

## I. INTRODUCTION AND BACKGROUND

On July 12, 2007, the roof of a new water storage tank on Anderson Air Force Base collapsed. Third-party Defendant Smithbridge Guam, Inc. ("Smithbridge") had recently built the tank, and Smithbridge and its subcontractor, Cross-Defendant Jorgensen & Close Associates, Inc. ("Jorgensen") had designed it. GMP Associates, Inc. ("GMP") had nothing to do with either the construction or the design of the tank. However, instead of suing Smithbridge, Plaintiff Maeda Pacific Corporation ("Maeda"), the prime contractor of the project, worked out a deal with Smithbridge: Smithbridge would clean up and rebuild the roof (and get paid for it) and Maeda would sue GMP. But GMP was no longer even part of the project by the time the plans for the roof were finalized, much less when the roof was actually built.

After Maeda sued GMP, GMP filed a cross-complaint against Jorgenson and a third-party complaint against Smithbridge for contribution. On September 10, 2009, Jorgensen moved for summary judgment on Maeda's complaint and on GMP's cross-complaint (the "Jorgensen Motion"). With respect to GMP's cross-complaint Jorgensen makes two arguments. First, it argues that the Economic Loss Doctrine immunizes Jorgenson from liability to Maeda in tort, and so, by extension, Jorgensen cannot be held liable to GMP as a joint tortfeasor. (*See* Jorgensen Mem. P. & A. Supp. Jorgenson's Mot. Summ. J. ("Jorgensen Mem.") pp. 4-12.) Alternatively, Jorgensen argues that if the Court finds that the pre-litigation settlement between Maeda and Smithbridge was a good-faith settlement pursuant to 7 G.C.A. § 24606, Jorgensen is a third party beneficiary of the settlement, and hence entitled to protection under Guam's Contribution Among Joint Tortfeasors Act, 7 G.C.A. § 24601, *et seq.* (*Id.* pp. 18-20.)

However, as shown below, Jorgensen's motion is premature, because GMP has not yet received discovery necessary to make its own motion based on the Economic Loss Doctrine or to respond fully to Jorgensen's motion. Specifically, Maeda has not produced the documents that GMP has requested and designated, no depositions have been taken, and no discovery has been taken on the issue of non-economic loss damages. The Court should not permit a piecemeal approach to an issue that could be dispositive not only to GMP's cross-complaint, but

also to Maeda's case in chief. Ruling on this motion now without the discovery GMP needs would significantly and unnecessarily prejudice GMP and subject GMP to the risk of inconsistent results. Therefore, this Court should deny or continue Jorgensen's motion for summary judgment against both GMP and Maeda (as to Maeda's tort claim) under Federal Rule of Civil Procedure 56(f).

Moreover, reaching the merits on Jorgensen's motion would violate GMP's due process right to rebut evidence. GMP and Maeda are both cast in opposition to Jorgensen's motion, and GMP would have no opportunity to respond to and rebut any evidence that Maeda provides. Finally, denying Jorgensen's motion on procedural grounds serves the interest of judicial economy, as a decision on Jorgenson's motion may leave the same issue undecided in Maeda's claim against GMP.

With respect to Jorgensen's alternative – and somewhat desultory – alternative motion that it is a third-party beneficiary of the settlement between Smithbridge and Maeda, the Court can and should deny it on the merits, for a variety of reasons. There is no legal basis to consider Jorgenson a third-party beneficiary of someone else's settlement. Moreover, the settlement was not a good-faith settlement under Guam law, so it does not even entitle Smithbridge – much less Jorgensen – to any protection. And Jorgensen offers no evidence that it gave any consideration as part of the settlement.

## II. STATEMENT OF FACTS

GMP was retained by Maeda to serve as the engineer of record and quality control manager for the Anderson Air Force Base project. (Melnyk Decl. ¶ 1.) Although GMP designed several elements of the project, GMP was not responsible for designing the water storage tank. (*Id.* ¶ 4.) GMP did create specifications for the water storage tank. (*Id.* ¶ 5.) Those specifications were for Smithbridge's use in designing the water storage tank. (*Id.*) The specifications created by GMP provided for roof hatches and roof vents. (*Id.*) In addition, GMP ensured that vents were included in the Design Analysis, provided Smithbridge and Maeda with product information and the general installation location for the vents, and listed installation drawings for the vents on the Submittal Register. (*Id.*)

During the period that GMP served as the engineer of record and quality control manager for the Anderson Air Force Base project, GMP was responsible for maintaining the files of all of the engineering documents for the entire project. (*Id.* ¶ 11.) GMP received the design drawings of every element of the project, as they were created – including elements for which GMP was not responsible for designing. (*Id.*) However, GMP was not responsible for reviewing structural design drawings created by other parties for accuracy; GMP was only required to maintain such documents in the files. (*Id.*) Among the documents that GMP received for file maintenance were design drawings for the water storage tank, which were submitted to GMP by Smithbridge. (*Id.* ¶ 11.) These drawings indicate that Jorgensen created them. (*Id.* ¶¶ 11 and 12, Ex. E.)

In addition to maintaining the files, GMP received shop drawings for each element of the project, as they were created, and was responsible for making sure that the contractors built in accordance with the specifications. (Id. ¶ 15.) However, during the time that GMP served as quality control manager for the project, no shop drawings for the water storage tank were prepared or submitted to GMP. (Id. ¶ 16.) The contract between GMP and Maeda was set to expire on October 31, 2005 (*id.* ¶ 13), however, GMP stayed on the project while the parties tried to negotiate an extension. (*Id.*) However, the parties did not reach an agreement on the fees, and therefore, the contract ended on December 23, 2005. (Melnyk ¶¶ 13 and 14, Ex. F.) At that point, construction had not yet begun on the water storage tank roof. (Melnyk ¶ 13.) After December 23, 2005, GMP had no further involvement in the project. (*Id.* ¶ 13.) GMP never saw the shop drawings for the water storage tank roof, and it had no responsibility to review them. (*Id.* ¶ 16.)

Once GMP's contract ended, a new quality control manager took over. GMP provided that new quality control manager, Jeremias A. Carrera of Pacific Island Engineers, Inc., with all of the specifications, including the specifications for the water storage tank. (*Id.* ¶ 17.) These specifications for the water storage tank called for vents for the roof. (*Id.*)

Maeda contends that the absence of roof vents was the cause of the tank's collapse. Whether that is the case, GMP was not responsible for the design or construction of the roof of

the tank, or for the absence of roof vents. Moreover, Smithbridge (upon whom Jorgensen relies for its recitation of "undisputed facts," (Jorgensen Mem. p. 2)) and Maeda neglect to mention that the Navy commissioned a second forensic report, after Smithbridge's report was published, and the Navy's report differs from Smithbridge's report with respect to the cause of the collapse. (*Id.* ¶ 18, Ex. G.)

### III. ARGUMENT

#### A. The Court Should Deny or Continue Jorgensen's Motion for Summary Judgment against Maeda and GMP under FRCP 56(f)

Federal Rule of Civil Procedure 56(f) provides:

> If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

"Ordinarily, summary judgment should not be granted when there are relevant facts remaining to be discovered, but the party seeking a continuance bears the burden to show what specific facts it hopes to discover that will raise an issue of material fact." *Cont'l Mar. v. Pac. Coast Metal Trades*, 817 F.2d 1391, 1395 (9th Cir.1987). "The requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment. Failure to comply with these requirements is a proper ground for denying discovery and proceeding to summary judgment." *Family Home & Fin. Ctr. Inc. v. Fed. Home Loan Mortgage Corp.*, 525 F.3d 822, 827 (9th Cir.2008) (internal citation omitted).

Here, Jorgensen has asserted that Maeda's tort claim damages are entirely for economic loss. (*Jorgensen Mem.* p. 4.) Obviously GMP has a significant interest in the outcome of Jorgensen's motion against both Maeda and GMP. If all of Maeda's tort damages are pure economic loss, the court's ruling on the Economic Loss Doctrine could determine Maeda's rights in tort against GMP and/or GMP's contribution rights against Jorgenson.

However, the parties have not completed any discovery relevant to this issue. Instead, Jorgensen relies entirely on its reading of Maeda's pleadings to conclude that Maeda will claim

only economic loss damages. (*Id.* p. 4.) This absence of discovery prevents GMP from presenting "facts essential to justify its opposition." Fed. R. Civ. P. 56(f). In particular, GMP needs to complete discovery from Maeda to determine whether Maeda has any claims for damages that do not constitute pure economic loss. (Hofman Decl. ¶ 5.) GMP has attempted to take discovery: it propounded a request to Maeda for production of documents, and then sent representatives to Maeda's offices to designate documents for production, but Maeda has not produced those documents. (*Id.* ¶¶ 2 and 5, Exs. A and B.) Moreover, in order to demonstrate that Maeda does not have any claims for tort damages which are not pure economic loss, GMP needs the opportunity to issue requests for admission to Maeda. (*Id.* ¶¶ 6 and 7.)

Without this discovery, GMP does not have all the necessary evidence to justify its opposition to Jorgensen's motions for summary judgment against both GMP and Maeda. If Maeda has claims for non-economic loss, GMP would be entitled to oppose Jorgensen's motion on that basis. *See* Fed. R. Civ. P. 56(e). If Maeda does not have claims for non-economic loss, GMP would be entitled to make its own motion for summary judgment. At present, however, this Court should deny Jorgensen's motion without prejudice and permit the parties to complete discovery and obtain facts which "are essential to oppose summary judgment." *Family Home*, 525 F.3d at 827.

"The protection afforded by Rule 56(f) is an alternative to a response in opposition to summary judgment under Rule 56(e) and is designed to safeguard against a premature or improvident grant of summary judgment." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) (citing 10A Wright, Miller, and Kane, *Federal Practice and Procedure* § 2740 (1983)). Granting Jorgensen's motion for summary judgment now would be premature and improvident. The issue of economic loss has dispositive implications for all of the defendants, and there is a risk of inconsistent results if the Court addresses the issue now in the context of Jorgensen's motion, and again later, once more evidence has become available, in the context of a motion by GMP. For example, this Court might rule today, based on the limited discovery to date, that Jorgensen is entitled to judgment because of the absence of evidence of non-economic loss – only to have Maeda subsequently produce evidence of non-economic loss

damages and prevent GMP from obtaining summary judgment on the *same issue and the same damages*. This Court should not allow the parties to address the issue of the Economic Loss Doctrine piecemeal, at significant potential prejudice to GMP.

Accordingly, GMP is entitled to the protection of Rule 56(f). "Rule 56(f) motions are generally favored, and should be liberally granted.'" *F.T.C. v. Neovi, Inc.*, 2008 WL 131361, 2 (S.D. Cal. 2008) (quoting *Stearns Airport Equipment Co., Inc. v. FMC Corp.*, 170 F.3d 518, 535 (5th Cir. 1999)). GMP would be significantly prejudiced if the Court rules now on the application of the Economic Loss Doctrine to the tort damages alleged by Maeda before Maeda has produced relevant documents. No purpose is served by having multiple rounds of motions on the same dispositive issue, and Jorgensen can show no prejudice by delay. This Court should exercise its discretion under Rule 56(f) to deny without prejudice – or at the very least continue – Jorgensen's motion for summary judgment, to enable the Court to address the issue of the Economic Loss Doctrine as it applies to *all* defendants, once and for all, in a subsequent set of motions.

### B. Reaching the Merits on Jorgensen's Motion Violates GMP's Due Process Rights

If this Court were to rule on the merits of Jorgensen's motion for summary judgment, it will have done so on a motion in which both GMP and Maeda are in opposition. Granting summary judgment for Jorgensen against either GMP or Maeda precludes GMP from recovering from Jorgensen in contribution if GMP is ultimately found liable to Maeda in tort. *See* 7 GCA § 24602. However, GMP will have no meaningful opportunity to respond to Maeda's offer of evidence in opposition, in violation of GMP's due process right to rebut new evidence. *See Gomez-Vigil v. I.N.S.*, 990 F.2d 1111, 1114 (9th Cir. 1993) (right to rebut evidence is among rights assured by the due process clause of the Fifth Amendment), *Peabody Coal Co. v. Greer*, 62 F.3d 801, 804-05 (6th Cir. 1995) ("right to a hearing, which is part of [defendant's] Fifth Amendment due process rights, encompasses not only the right to present evidence, but also the right to rebut the claims of [the claimant] under the correct legal standards" (internal quotation omitted)).

This Court cannot decide the issue of Jorgensen's liability under GMP's right to contribution without giving GMP an opportunity to respond to Maeda's evidence. *Peabody Coal*, 62 F.3d at 804-05. Moreover, if this Court were to grant Jorgensen's motion, it would be making a dispositive ruling on GMP's derivative claim against Jorgensen before the Court has had the opportunity to fully consider the merits of the Maeda's parent claim of negligence against GMP. Even if Court were to dismiss Jorgensen based on the Economic Loss Doctrine, it might still decide that Maeda still possesses a claim of negligence against GMP after Maeda and GMP have fully briefed Maeda's case in chief, in which case Jorgensen will be out of the case, leaving GMP unfairly saddled with the entire tort liability without any right of contribution. *See Federated Dept. Stores Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (a summary judgment is res judicata as to any claim that could have been asserted on the basis of the facts presented to the court). GMP's right to due process prevents this Court from deciding the issue of Jorgensen's liability for contribution to GMP before it has addressed GMP's tort liability to Maeda upon which it is grounded.

### C. Jorgensen's Motion Violates the Principle of Judicial Economy

Denying Jorgensen's motion without prejudice would also promote judicial economy, because the motion is premature. If the Court entertains Jorgensen's motion now, it will still have to address the issue of tort liability a second time when deciding Maeda's case in chief. The Court will be forced to consider a second, voluminous set of arguments and evidence – including additional arguments and evidence from Maeda, wasting the parties' and the Court's time and resources.

Inversely, while GMP would be significantly prejudiced by the premature ruling Jorgensen is seeking, Jorgensen will not be prejudiced by a denial of its motion. *See Preaseau v. Prudential Ins. Co. of America*, 591 F.2d 74, 79 (9th Cir. 1979) (an earlier denial of a motion for summary judgment is not res judicata or "law of the case.") Indeed, even if the Court were to deny Jorgensen's motion on the merits, Jorgensen will still have an opportunity to bring its motion after the Court finds that GMP is not found liable in tort. Otherwise, if GMP is found liable in tort, Jorgensen would not have been prejudiced by the delay in deciding its motion

since its motion is dependent on the outcome of Maeda's case in chief. Allowing Jorgensen's motion to go forward does not serve the interests of justice or judicial efficiency, nor is it conducive to a fair resolution of this case, whereas in the alternative, denying Jorgensen's motion, would not prejudice Jorgensen.

Since Jorgensen will not be prejudiced by a denial of its motion, GMP should be given an opportunity to present its own defenses on its own behalf. The Court should therefore exercise its discretion to deny Jorgensen's motion without prejudice, on the procedural grounds that the motion is premature, and denying it at present would promote judicial economy and would not prejudice Jorgensen.

### D. Jorgensen Is not Entitled to a Judgment on the Basis of Smithbridge's "Settlement" with Maeda

Jorgensen goes to great length to argue that Maeda cannot be a third-party beneficiary of the Smithbridge-Jorgensen contract. (*Jorgensen Mem.* pp. 13-17.) Hedging its bets, however, Jorgensen half-heartedly argues that, "in the unlikely event that the Court should conclude [Maeda has third-party beneficiary standing to sue Jorgensen at contract], then Jorgensen is obligated to advance an alternative ground for dismissal of Maeda's claims, namely that Jorgensen, who was Smithbridge's subcontractor, is a third party beneficiary of the settlement agreement between Smithbridge and Maeda." (*Id.* p. 18.)

This argument makes no sense. Whether Jorgenson's construction design subcontract with Smithbridge was intended to benefit Maeda has nothing to do with whether Smithbridge's settlement with Maeda was intended to benefit Jorgenson. Jorgenson has presented no evidence that Smithbridge intended to settle on behalf of Jorgenson, or that Smithbridge had any obligation to do so, or that Maeda intended to release Jorgenson as part of its settlement with Smithbridge. The Smithbridge-Maeda settlement says nothing about releasing Jorgenson or benefiting Jorgenson, and there are no grounds for reading such a release into it. Nor does Jorgensen cite any legal authority supporting the proposition that it could somehow be a third-party beneficiary of a settlement in which it did not participate. (*See id.* pp. 13-17.)

Moreover, as GMP has shown in its opposition to the pending motion by Smithbridge seeking judgment in its favor based on the Smithbridge-Maeda settlement, that settlement does not qualify for "good-faith" status under Guam's law of contribution. There has been no showing by Smithbridge (or by Jorgenson) that the settlement required Smithbridge to pay Maeda anything approaching Smithbridge's proportional share of the potential liability for Maeda's claimed tort damages. Indeed, there has been no showing that Smithbridge paid Maeda anything at all in exchange for the settlement and release of Maeda's claims against Smithbridge. (*See* GMP's Opp. to Smithbridge's Mot. Summ. J. at pp. 10-14) (incorporated by reference as if set forth fully herein).

Finally, even if Jorgensen were somehow a third-party beneficiary of the Smithbridge-Maeda settlement, and even if it was a good-faith settlement as between the two settling parties, Jorgensen provides no authority for the proposition that being a third party beneficiary of a settlement can confer immunity from contribution under Guam's Contribution Among Joint Tortfeasors Act. *See* 7 GCA § 24606. Indeed, Jorgenson has provided no evidence that it paid Maeda any consideration whatsoever for its supposed release under that settlement. In order for a putative joint tortfeasor to receive protection from a "good faith" settlement, the tortfeasor must pay its "proportionate share" of the potential liability. *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal.3d 488, 500 (1985); *c.f. Commercial U. Ins. Co. v. Ford Motor Co.*, 640 F.2d 210, 213 (9th Cir. 1981) (finding a bad faith settlement where Ford offered no consideration in return because "the dismissal must represent a settlement which is a good faith determination of relative liabilities"). Jorgensen bears the burden of showing that it paid its "proportionate share" of the liability, and is therefore entitled to protection as a good faith settlor with Maeda. 7 GCA § 24606(d). Having made no attempt to meet this burden, Jorgenson is not entitled to be immunized from any liability for contribution without having paid a single cent of its "proportionate share of liability." *Id.* at 499.

## IV. CONCLUSION

Jorgensen's motion for summary judgment based on the ground that the Economic Loss Doctrine precludes tort liability to Maeda (and by extension contribution to GMP) is premature.

GMP cannot fully oppose it or join it at present because Maeda has not yet fully responded to GMP's inspection demands, and no discovery has taken place regarding non-economic damages. Rather than considering the issue piecemeal – and at the risk of great prejudice to GMP – this Court should exercise its discretion under Rule 56(f) and either deny Jorgensen's motion or defer consideration until discovery is complete and the issue can be ultimately decided as to all parties at the same time.

Jorgensen's alternative motion for summary judgment on the ground that it is a third party beneficiary of the Smithbridge-Maeda settlement should be denied on the merits. Jorgensen has failed to carry its burden to show that it is a third-party beneficiary of that settlement, or that the settlement qualifies as a "good faith" one, or that Jorgensen paid consideration approximating its "proportionate share" of the potential tort liability to Maeda. Indeed, all the evidence indicates that Jorgensen is *not* a third-party beneficiary, that the settlement was *not* in good faith, and that Jorgensen paid *no* consideration.

For all the foregoing reasons, GMP Associates respectfully requests that the Court deny Jorgensen's motion for summary judgment.

Submitted this 1st day of October, 2009.

CALVO & CLARK, LLP

By: /s/ Arthur B. Clark

Arthur B. Clark

Attorneys for Defendants
GMP HAWAII, INC., DBA GMP ASSOCIATES, AND OHIO PACIFIC TECH, INC., DBA GMP ASSOCIATES, INC.