THOMAS C. STERLING
BLAIR STERLING JOHNSON & MARTINEZ
A PROFESSIONAL CORPORATION
SUITE 1008 DNA BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE: (671) 477-7857



FILED
DISTRICT COURT OF GUAM

MAY 20 2011

JEANNE G. QUINATA
CLERK OF COURT

*Attorneys for Defendant Lexington Insurance Company*

# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| MAEDA PACIFIC CORPORATION, a Guam corporation, | CIVIL ACTION NO. 08-00012 |
| Plaintiff, | |
| vs. | |
| GMP HAWAII, INC., a Hawaii corporation doing business as GMP ASSOCIATES, OHIO PACIFIC TECH, INC., an Ohio corporation doing business as GMP ASSOCIATES, INC., and GMP ASSOCIATES, INC. (collectively, "GMP"); and their insurance company, LEXINGTON INSURANCE COMPANY; JORGENSEN & CLOSE ASSOCIATES, INC., a Colorado corporation, and its insurer, U.S. SPECIALTY INSURANCE COMPANY, | **AFFIDAVIT OF THOMAS C. STERLING IN SUPPORT OF MOTION TO STAY PROCEEDINGS ON DIRECT ACTION CLAIM PENDING CONTRACTUAL ARBITRATION** |
| Defendants. | |

I, **THOMAS C. STERLING,** being first duly sworn do state that:

1.    I am a principal in the firm of Blair Sterling Johnson & Martinez, P.C., counsel of record for Defendant Lexington Insurance Company in the instant matter. I have had primary responsibility in this firm for this matter since the inception of our involvement.

2.    Attached hereto as Exhibit "A" is a true and correct copy of Lexington Insurance Company's Architects and Engineers

BLAIR STERLING JOHNSON & MARTINEZ
A PROFESSIONAL CORPORATION
LAW OFFICES
SUITE 1008 DNA BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205

Professional Liability Policy Number 1156880 issued to GMP Associates Inc. as named insured upon which Maeda Pacific Corporation has asserted its direct action claims in the instant matter.

3.    Attached hereto as Exhibit "B" is a true and correct copy of Lexington's Demand for Arbitration filed in the American Arbitration Association seeking a hearing locale in Boston, Massachusetts which arbitration demand was filed against GMP Hawaii Inc., GMP Associates, Inc., Ohio Pacific Tech, Inc. and Maeda Pacific Corporation alleging a lack of coverage for the claims asserted in this action for the reasons set forth in the Arbitration Statement attached thereto.    The voluminous exhibits to this filing have not been attached.

4.    Attached hereto as Exhibit "C" is a true and correct copy of Maeda Pacific Corporation's Notice of Intent to appear and participate in the arbitration proceeding.

Further, affiant sayeth not.

**DATED**: MAY ___17___, 2011.

_____
**THOMAS C. STERLING**

**SUBSCRIBED AND SWORN** to before me this ___17TH___ day of May, 2011, by **THOMAS C. STERLING** .

JENNIFER D.S. MENDIOLA
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: Apr. 13, 2013
1008 DNA Building, 238 Archbishop
F.C. Flores St., Hagatna, Guam 96910

_____
**NOTARY PUBLIC**

ATTACHMENT: EXHIBITS "A", "B", & "C"

E56\44694-01\G:\PLD\TCS\552-AFFIDAVIT OF T C STERLING RE MAEDA V
GMP ET AL CV08-00012.DOC

- 2 -

# EXHIBIT

# "A"

## ARCHITECTS & ENGINEERS PROFESSIONAL LIABILITY POLICY

Policy No.: 1156880                    Renewal of: 1156531

NOTICE: THIS IS A CLAIMS-MADE POLICY. SUBJECT TO THE TERMS AND CONDITIONS OF THE POLICY, THIS INSURANCE APPLIES TO ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD.

### DECLARATIONS

ITEM 1.    Named Insured:   GMP ASSOCIATES, INC.

Address:   1100 ALAKEA ST., SUITE 1800
HONOLULU, HI 96813

ITEM 2.    Policy Period:
From: 12/17/2007 to: 12/17/2008
at 12:01 A.M. standard time at the address of the Insured stated above.

ITEM 3.    Limits of Liability: $ 1,000,000        Each Claim
$ 1,000,000        Policy Aggregate

ITEM 4.    Deductible:        $75,000          Each Claim

ITEM 5.    Premium:

A.  Total Advance Premium:              $87,325
B.  Annual Minimum Premium:             $87,325
C.  Minimum Earned Premium at Inception: $30,564

ITEM 6.    Audit Rate: Not Subject to Audit

ITEM 7.    Extended Reporting Period: 12 Month(s) at 125% of the total policy premium

ITEM 8.    Retroactive Date: 01-01-1987

ITEM 9.    Endorsements made a part of this policy: See attached Forms Schedule

Authorized Representative OR
Countersignature (in states where applicable)

CM-PL1 (Ed.03/04)
LX0423

Named Insured:   GMP ASSOCIATES, INC.

Policy No:  1156880                                          Effective Date:   12/17/2007

| Form Number | Edition Date | Endorsement Number | Title |
|---|---|---|---|
| LEXCM-PL-1 | 03/04 | | A&E PROF LIABILITY W/DED |
| LX9961 | 10/06 | | A&E PROF LIAB W/DED TXT |
| LX9883 | 11/05 | 001 | COVERAGE TERRITORY LIMITATION |
| LX8031 | 01/07 | 002 | PATROL ACCESS ENDORSEMENT |
| LEXCME077 | 03/86 | 003 | MINIMUM EARNED PREMIUM |
| NAMEINSD | 02/94 | 004 | NAMED INSURED AMENDMENT |
| LX8170 | 10/07 | 005 | ACCIDENT INSURANCE ENDORSEMENT |
| LX9925 | 04/06 | 006 | A&E PROF LIAB RISK MGMT SERVIC |

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

91222 (7/06)

## ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY

## NOTICE

THIS POLICY PROVIDES CLAIMS MADE AND REPORTED COVERAGE. THE POLICY APPLIES ONLY TO CLAIMS MADE UPON THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE SAME POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE.

THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGEMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR CLAIM EXPENSES. FURTHER NOTE THAT AMOUNTS INCURRED FOR CLAIM EXPENSES SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

VARIOUS PROVISIONS THROUGHOUT THIS POLICY RESTRICT OR EXCLUDE COVERAGE. PLEASE READ THE ENTIRE POLICY CAREFULLY TO DETERMINE THE INSURED'S RIGHTS AND DUTIES, AND WHAT IS AND IS NOT COVERED.

DEFINED TERMS APPEAR IN BOLD-FACED TYPE. PLEASE REFER TO SECTION III. DEFINITIONS

In consideration of the payment of the premium by the **Named Insured** and in reliance upon the statements in the **Insured's** application incorporated herein by reference, the **Company** agrees with the **Insured** subject to all of the terms and conditions of this policy, as follows:

## I. INSURING AGREEMENTS

### A. COVERAGES: (CLAIMS-MADE AND REPORTED)

The **Company** will pay on behalf of the **Insured** those sums in excess of the deductible shown in Item 4 of the Declarations that the **Insured** shall become legally obligated to pay as **Damages** because of **Claims** for a **Breach of Professional Duty** in the performance of **Professional Services** rendered to others by the **Insured** or any entity for whom the **Insured** is legally liable.

For this coverage to apply, all of the following conditions must be satisfied:

1. The **Breach of Professional Duty** forming the basis of any **Claim** must arise out of **Professional Services** that take place subsequent to the Retroactive Date shown in Item 8 of the Declarations and prior to the end of the **Policy Period**.

2. Prior to the effective date of this policy, no officer, director, principal, partner, insurance manager or risk manager of the **Insured** had knowledge of the **Breach of Professional Duty** or circumstance likely to give rise to a **Claim** under this policy. If such officer, director, principal, partner, insurance manager or risk manager of the **Insured** knew, prior to the effective date of this policy, of the **Breach of Professional Duty** or a circumstance likely to give rise to a **Claim** under this policy, then any continuation, change or resumption of such **Breach of Professional Duty** or circumstance during or after this **Policy Period** will be deemed to have been known prior to this **Policy Period** .

3. **Claim** must first be made against the **Insured** during the **Policy Period**.

4. The **Insured** must report the **Claim** to the **Company**, in writing, during the **Policy Period** or within the sixty (60) day period immediately following the end of the **Policy Period**.

### B. TERRITORY

The insurance afforded by this policy applies only to **Claims** arising out of a **Breach of Professional Duty** in the performance of **Professional Services** that take place in and result in a **Claim** brought within:

1. the United States of America, its territories or possessions or Puerto Rico; and

2. elsewhere in the world.

## C. DEFENSE PROVISIONS

1. When any **Claim** against the **Insured** for which coverage is provided under this policy is made or brought within the United States of America, its territories or possessions, or Puerto Rico, the **Company** has the right to investigate such **Claim**, and the duty to defend such **Claim** with defense counsel selected with the **Company's** approval, even if such **Claim** is groundless, false or fraudulent. The **Company's** obligation to defend or to continue to defend any **Claim** as provided in this subsection 1. shall end when the applicable limit of the **Company's** liability has been exhausted by payment of **Claim Expenses** or **Damages** or both.

2. When any **Claim** against the **Insured** for which coverage is provided under this policy is made or brought outside the areas described in subsection 1. above, the **Company** shall not be obligated to assume charge of the investigation, defense or settlement of such **Claim** but the **Company** shall have the right and shall be given the opportunity to associate with the **Insured** in the investigation and defense of such **Claim**. The **Insured** shall, under the **Company's** supervision, make or cause to be made such investigation and defense as is reasonable under the circumstances. Subject to prior written authorization by the **Company**, the **Insured** may also effect settlement. The **Company** shall reimburse the **Insured** for **Damages** and the reasonable and necessary costs of investigating and defending any such **Claim** such as (1) fees charged by any attorney selected by the **Insured** to defend the **Claim**, and (2) all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a decision regarding the **Claim** as authorized by the **Company**. For purposes of computing the amount of the limits of liability and deductible amount under this policy, such reasonable costs shall be construed as **Claim Expenses**. The **Company's** obligations under this subsection 2. Shall end when the applicable limit of liability has been exhausted by the payment of **Claim Expenses** or **Damages** or both.

## D. SETTLEMENT PROVISIONS

The **Company** will not settle or compromise any **Claim** without the consent of the **Insured**. If, however, the **Insured** refuses to consent to a settlement or compromise recommended by the **Company** and elects to contest such **Claim** or continue legal proceedings in connection with such **Claim**, then the **Company's** liability for the **Claim** shall not exceed the amount for which the **Claim** could have been so settled plus **Claim Expenses** incurred up to the date of such refusal subject to the applicable limit of liability under this policy.

## E. CLAIM EXPENSES

**Claim Expenses** shall be paid by the **Company**, and such payments reduce the available limit of liability. The **Insured** must first pay any applicable deductible amounts as shown forth in Item 4 of the Declarations. **Claim Expenses** shall also be applied to the deductible.

## II. EXCLUSIONS

This policy does not provide coverage and the **Company** will not pay **Claim Expenses** or **Damages** for any **Claim** based upon or arising out of:

A. any dishonest, fraudulent, criminal or malicious conduct or **Breach of Professional Duty** or conduct of a knowingly wrongful nature committed intentionally or at the direction of an **Insured**; however, the **Company** shall defend a **Claim** against an **Insured** who did not commit, participate in, or have knowledge of the dishonest, malicious, or criminal acts or omissions, except the **Company** shall not defend any criminal prosecution under any circumstances;

B. any **Claim** made by any **Insured** against any other **Insured**;

C. the actual or alleged: (1) **Wrongful Termination**; (2) **Discrimination**; or (3) **Sexual Harassment** of any past or present employee of the **Insured**;

D. any **Insured's** involvement as a partner, officer, director, stockholder, employer or employee of any business enterprise not named in the Declarations;

E. any **Insured's** involvement in or **Professional Services** rendered to or on behalf of any organization or subsidiary or affiliate thereof, not named in the Declarations: (1) that wholly or partly owns, or to any extent controls, operates or manages an **Insured**, or (2) in which an **Insured** has a greater than 25% ownership, or (3) that is controlled, operated or managed by an **Insured**;

F. the design or manufacture of any products developed by any **Insured** for multiple sale or mass distribution, including but not limited to computer programs or software; however; this exclusion shall not apply to software created or modified specifically for a client for whom the **Insured** is rendering **Professional Services**;

G. any express warranty or guarantee unless liability would have attached to the **Insured** in the absence of an express warranty or guarantee and such liability arises out of a **Breach of Professional Duty** by the **Insured** in the performance of **Professional Services**;

H. the cost to repair or replace any faulty: workmanship, assembly, construction, erection, fabrication, installation or remediation if such work is performed in whole or in part by:

   1. the **Insured**; or

   2. any subcontractor of an **Insured**; or

   3. any enterprise and/or any subsidiary of any enterprise that any **Insured** controls, manages, operates or holds ownership in or by any enterprise that controls, manages operates or holds ownership in an **Insured**;

I. the liability of others assumed by any **Insured** under any contract or agreement unless such liability arises as a result of a **Breach of Professional Duty** by the **Insured** in performance of **Professional Services** and would have existed absent such contract;

J. **Bodily Injury** sustained by any employee of any **Insured** while engaged in employment by any **Insured**, or (1) any **Claim** by any person on account of such injury whose right to assert the **Claim** arises by reason of any blood, marital or other relationship with the employee, or (2) any **Claim** by any person or entity seeking contribution or indemnity because of such injury except that this exclusion does not apply to liability arising under a written contract executed prior to the injury;

K. any obligation of any **Insured** under any worker's compensation, disability benefits or unemployment compensation law or any similar laws;

L. nuclear reaction, radiation or contamination, under any circumstances and regardless of cause, within or originating from a **Nuclear Facility**;

M. 1. war, including undeclared or civil war; or

   2. warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   3. insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

This exclusion does not apply to a certified act of terrorism defined by Section 102. Definitions, of the Terrorism Risk Act of 2002 and any revisions or amendments thereto.

N. services as an **Agency Construction Manager** with respect to any project for which any **Insured** holds any contract to perform any construction, erection, assembly, fabrication, installation or remediation either by itself or through any subcontractor at any tier. This exclusion shall not apply to the provision of other **Professional Services** by the **Insured** or any entity for which the **Insured** is legally liable.

### III. DEFINITIONS

A. **Agency Construction Manager** means a person or organization that provides professional consulting services to a project owner for a fee to assist in the oversight of a project and the progress of the design and construction process.

B. **Bodily Injury** means physical bodily injury, sickness or disease sustained by a person, including death at any time resulting from any of these.

C. **Breach of Professional Duty** means negligence, defined as the failure to meet the professional standard of care legally required or reasonably expected under the circumstances in the performance or non-performance of **Professional Services** rendered to others by the **Insured** which results in **Damages** for which the **Insured** is legally liable.

D. **Claim** means any written ( and received by an **Insured** seeking **Dam** s and alleging liability or responsibility on the part of the **Insured** or persons for whose conduct the **Insured** is legally liable.

E. **Claim Expenses** means:

1. fees charged by any attorneys designated and approved by the **Company** for services in connection with the investigation or defense of **Claims**;

2. all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, if authorized by the **Company**.

3. **Claim Expenses** shall not include the salaries of any employee of the **Company** or of the **Insured**.

F. **Company** means the Lexington Insurance **Company**.

G. **Damages** means any amount which an **Insured** is legally obligated to pay for any **Claim** to which this insurance applies and shall include: judgments and settlements, interest on judgements, and punitive, exemplary or multiple **Damages**, provided always that **Damages** shall not include the return or withdrawal of professional fees, sanctions, fines or penalties imposed by law. **Damages** shall not include matters that may be deemed uninsurable under the law pursuant to which this policy shall be construed. **Damages** also shall not include **Liquidated Damages** except for liability the **Insured** would have had in the absence of such **Liquidated Damages**.

H. **Discrimination** means termination of an employment relationship or a demotion or a failure or refusal to hire or promote any individual because of race, color, religion, age, sex, disability, pregnancy, national origin or sexual orientation.

I. **Insured** means:

1. the **Named Insured** designated in Item 1 of the Declarations;

2. any person who is or was a partner, officer, director, stockholder or employee of the **Named Insured** but only while acting within the scope of his/her duties as such;

3. the heirs, executors, administrators, and legal representatives of each **Insured** as defined in 1. and 2. above, in the event of death, incapacity or bankruptcy of such **Insured**, but only as respects liability arising out of **Professional Services** rendered by or on behalf of the **Named Insured** prior to such **Insured's** death, incapacity or bankruptcy;

4. a former partner, officer, director or employee of the **Named Insured** while rendering **Professional Services** on behalf of the **Named Insured**;

5. contract or leased personnel rendering **Professional Services** under the supervision of and on behalf of the **Named Insured**;

6. joint ventures in which the **Named Insured** is named as a co-venturer, but only as respects the **Insured's** legal liability arising out of the **Insured's** participation in such joint venture;

7. any **Predecessor in Interest**.

J. **Liquidated Damages** means an amount stipulated in advance in a contract to be the amount or measure of damages to be recovered by a party to that contract if the other party breaches the agreement or fails to perform or perform adequately its obligations under the contract.

K. **Mediation** means non-binding intervention by a qualified, professional mediator.

L. **Named Insured** means the person or entity designated as such in Item 1 of the Declarations.

M. **Nuclear facility** means the site at which a nuclear reactor is located or where nuclear waste or material is disposed of or stored.

N. **Policy Period** means the period from the effective date of this policy to the expiration date or earlier termination date, if any, of this policy.

O. **Predecessor in Interest** means any prior entity whose assets, partners, principals or shareholders have been acquired by the **Insured** and whose name has been listed in the application attached hereto, and for whose insurance the **Insured** is responsible by written agreement.

P. **Professional Services** means those services that the **Insured** is legally qualified to perform for others in their capacity as an architect, engineer, land surveyor, landscape architect, **Agency Construction Manager**, or as specifically defined by endorsement to this policy. **Professional Services** shall not include facilities operations and maintenance operations or activities.

Q. **Sexual Harassment** means unwelcome sexual advances or requests for sexual favors or other verbal or physical conduct of a sexual nature that

1. are made a condition of employment or

2. are used as a basis for employment decisions or

3. create a work environment that interferes with performance.

R. **Subsidiary** means any entity, in which more than 50% of the outstanding securities or voting rights representing the present right to vote for the election of directors in such entity is owned or controlled, directly or indirectly, in any combination, by the **Named Insured**.

S. **Wrongful Termination** means termination of an employment relationship in a manner which is against the law and wrongful or in breach of an express or implied agreement to continue employment.

## IV. LIMITS OF LIABILITY AND DEDUCTIBLE

### A. LIMIT OF LIABILITY-EACH CLAIM

Subject to B. the Limit of Liability-Aggregate, below, the liability of the **Company** for each covered **Claim** shall not exceed the amount stated in Item 3 of the Declarations for Each **Claim**. This limit is the maximum amount of **Damages** or **Claim Expenses** or both that the **Company** will pay for each covered **Claim**. The limit of liability shall apply in excess of the deductible.

### B. LIMIT OF LIABILITY - AGGREGATE

Subject to A. Limit of Liability - Each **Claim**, above, the liability of the **Company** shall in no event exceed the amount stated in Item 3 of the Declarations as the Policy Aggregate as a result of all covered **Claims**. This limit is the maximum amount of **Damages** or **Claim Expenses** or both that the **Company** will pay under this policy for all covered **Claims** including those reported as provided for in SECTION V. CONDITION C. Extended Reporting Period, if applicable.

Once the applicable limits of liability have been exhausted, the **Company** will not defend or pay **Damages** or **Claim Expenses** for any **Claim**.

### C. MULTIPLE INSUREDS

The number of **Insureds** covered by this policy shall not operate to increase the limits of liability as specified above.

### D. MULTIPLE CLAIMS

Two or more covered **Claims** arising out of a single **Breach of Professional Duty** or any series of related **Breaches of Professional Duty** will be considered a single **Claim** and shall be deemed to be made at the time the first of such **Claims** is made. This policy shall only apply if the first or earliest **Claim** arising from such **Breach of Professional Duty** or series of related **Breaches of Professional Duty** is made during the **Policy Period** or Extended Reporting Period, if applicable. These provisions apply regardless of the number of **Insureds** involved in such a **Claim**, the number of **Claims** made, or the number of people or organizations that make the **Claims**.

The number of **Claims** made or the number of people or organizations that make **Claims** shall not operate to increase the Limits of Liability as specified in subsections A and B above.

### E. DEDUCTIBLE - EACH CLAIM

The deductible amount stated in the Declarations applies to each **Claim** and shall be paid by the **Insured**. The deductible shall be applied to the payment of **Damages** or **Claim Expenses** or both.

The **Company** may advance payment for part or all of the deductible amount and, upon notification of such payment made, the **Insured** must promptly reimburse the **Company** for the deductible amounts advanced by the **Company**.

Until a Claim is made, ( deductible does not apply to Claim Ex..ases incurred by the Company or at the Company's specific request as respects possible Claims reported under SECTION V. CONDITIONS B. REPORTING OF POTENTIAL CLAIMS.

## F. REIMBURSEMENT:

The Company will reimburse the Insured, upon written request, for loss of earnings by the Insured as a result of being required to attend, at the Company's request, a mediation, arbitration, deposition, or trial related to a covered Claim, subject to the following:

1. No reimbursement will apply to the first three (3) days attendance of the Insured required for each Claim;

2. Loss of earnings reimbursement will not be considered as payment of a Claim or Claim Expenses and will be in addition to the limits of liability. Reimbursement is not subject to the deductible.

3. Loss of earnings reimbursement shall not exceed $400 per day per loss of earnings Claim, subject to a maximum annual aggregate reimbursement of $7,500 for all loss of earnings Claims.

## G. MEDIATION:

If the Insured and the Company jointly agree to utilize Mediation as a means to try to resolve a Claim made against the Insured, and if such Claim is resolved through the use of Mediation, then the Insured's deductible obligation shall be reduced by 50% subject to a maximum reduction of $20,000. The Company shall reimburse the Insured for any applicable deductible payment made in excess of such amount prior to the Mediation as soon as practicable after the conclusion of the Mediation.

## V. CONDITIONS

## A. INSURED'S DUTIES WHEN THERE IS A CLAIM

As a condition precedent to the right of coverage under this policy, the Insured must do the following:

1. If a Claim to which this policy applies is made against the Insured, give written notice, as soon as practicable, containing the information detailed in CONDITION B., below, to:

> Lexington Insurance Company
> 100 Summer Street
> Boston, Massachusetts 02110-2103
> Attn: Claim Department

Written notice shall include every demand, notice, summons or other process received by the Insured or the Insured's representatives.

2. The Insured must cooperate with the Company and, upon the Company's request, submit to examination and interrogation by a representative of the Company, under oath if required, and shall attend hearings and depositions and shall assist the Company in the investigation, settlement and defense of Claims or suits as well as the giving of a written statement or statements to the Company's representatives all without charge to the Company.

3. If the Insured has the right to either accept or reject arbitration of any Claim, exercise such right only with the written consent of the Company.

4. Not make any payment, admit any liability, settle any Claims or assume any obligations without the prior written consent of the Company.

5. Do whatever is necessary to secure and affect any rights of indemnity, contribution or apportionment that the Insured may have.

6. Other than what is required by law, refrain from discussing the facts and circumstances of any Claim with anyone other than legal counsel representing the Insured or representatives of the Company.

## B. REPORTING OF A POTENTIAL CLAIM

If the Insured first becomes aware during the Policy Period of an actual or alleged **Breach of Professional Duty** or circumstance arising out of **Professional Services** which is reasonably likely to result in a **Claim**, the Insured must give written notice to the **Company** containing the information listed below. If such written notice is received by the **Company** prior to the end of the **Policy Period**, any **Claims** subsequently made against the Insured arising out of such conduct shall be deemed for the purpose of this policy to have been made on the last day of the **Policy Period**. The Insured shall cooperate fully with the **Company**, and any investigation conducted by the **Company** or its authorized representatives, and shall be subject to the terms set forth in SECTION V. CONDITIONS A. INSURED'S DUTIES WHEN THERE IS A CLAIM above as applicable to a **Claim**.

It is a condition precedent to the coverage afforded by this policy that the written notice shall contain the following information:

1. The actual or alleged **Breach of Professional Duty** or circumstance which is the subject of a potential **Claim**;

2. A description of the **Professional Services** rendered by the Insured which may result in the **Claim**;

3. The date(s) of such conduct which may result in the **Claim**; and

4. A description of the injury or damage that has or may result in a **Claim**.

5. The identities and address of any potential claimant(s);

6. The anticipated location(s) of any such potential **Claim**;

7. The circumstances by which the **Insured** first became aware of the potential **Claim**.

If all of the above information is not so provided or is, in the reasonable judgement of the **Company**, deemed inadequate, the **Company** shall inform the **Insured** that any **Claim** made after the **Policy Period** relating to the written notice will not be deemed to have been made during the **Policy Period**.

## C. EXTENDED REPORTING PERIOD

If this policy is canceled or non-renewed by the **Company** or the **Named Insured** for reasons other than non-payment of premiums or non-compliance with the terms and conditions of this policy, the **Named Insured** shall have the option to purchase an Extended Reporting Period by advising the **Company** in writing, as provided below, of its election to do so, accompanied by the payment of the additional premium specified in Item 7 of the Declarations. The Extended Reporting Period will apply only to **Claims** first made against the **Insured** during the number of months specified in Item 7 of the Declarations following immediately upon the effective date of such cancellation or non-renewal, but only by reason of a **Breach of Professional Duty** arising out of **Professional Services** which happens subsequent to the retroactive date and prior to the effective date of such cancellation or non-renewal, and which is otherwise covered by this policy. This Extended Reporting Period, if purchased, must be endorsed hereto.

If however, this policy is immediately succeeded by similar claims-made insurance coverage issued by any insurer for which the retroactive date is the same as or earlier than that shown in Item 8 of the Declarations, the succeeding insurance shall be deemed to be a renewal hereof and the **Named Insured** shall have no right to an Extended Reporting Period.

The quotation of a different premium or deductible amount or limit of liability or differing terms and conditions for renewal does not constitute a refusal to renew for the purpose of this provision.

As a condition precedent to the **Named Insured's** right to purchase the Extended Reporting Period, the **Named Insured** must have satisfied all conditions of this policy and must have paid all premiums and deductible amounts due.

The **Named Insured's** right to purchase the Extended Reporting Period must be exercised by notice, in writing, not later than sixty (60) days after the cancellation or expiration date of this policy and must include payment of the entire premium for the Extended Reporting Period as specified in Item 7 of the Declarations. If such notice and payment are not so given to the **Company**, the **Named Insured** shall not be able to purchase an Extended Reporting Period subsequently.

The Extended Reporting Period shall be non-cancelable. Accordingly, at the commencement of any Extended Reporting Period, the entire premium shall be considered earned.

The purchase of the Extended Reporting Period provision shall not reinstate the Policy Aggregate Limit or otherwise increase the Limits of Liability set forth in Item 3 of the Declarations.

## D. SUBROGATION

In the event of any payment under this policy, the **Company** shall be subrogated to all the **Insured's** rights of recovery therefor against any person or organization and the **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall do nothing after an incident reasonably likely to give rise to a **Claim** to prejudice such rights. The **Company** agrees to waive this right of subrogation against the client of the **Insured** to the extent that the **Insured** had, prior to a **Claim**, a written agreement to waive such rights.

## E. HOW OTHER INSURANCE APPLIES

Where other insurance is available to the **Insured** for **Damages** covered under the terms and conditions of this policy, the **Company's** obligation to the **Insured** shall be as follows:

1. This policy shall apply as excess insurance over any other valid insurance, whether collectible or not, be it primary, excess or contributing. This excess insurance shall in no way be increased or expanded as a result of the receivership, insolvency, or inability to pay of any insurer with respect to both the duty to indemnify and the duty to defend. This also applies to the **Insured** while acting as a self-insured for any coverage.

2. Where, in accordance with paragraph 1, above, this policy is excess insurance, the **Company** will:

   a. pay only its share of the amount of **Damages** and **Claims Expenses**, if any, that exceed the total amount of all such valid insurance, whether collectible or not; and

   b. pay only for such **Damages** and **Claims Expenses** as are covered by the terms and conditions of this policy.

The **Insured** shall promptly, upon request of the **Company**, provide the **Company** with copies of all policies potentially applicable, whether collectable or not, against the liability covered by this policy.

## F. CHANGES MADE TO THIS POLICY

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the **Company** from asserting any right under the terms of this policy. The terms and conditions of this policy cannot be waived or changed except by specific written endorsement issued by the **Company** and made part of this policy.

## G. ASSIGNMENT OF THE INSURED'S INTEREST

The interest of the **Insured** under this policy is not assignable to any other person or organization without the prior written consent of the **Company**.

## H. CANCELLATION

The **Named Insured** may cancel this policy by returning the policy to the **Company** or its authorized representatives. The **Named Insured** can also cancel this policy by written notice to the **Company** stating at what future date cancellation is to be effective. If the **Named Insured** cancels, earned premium shall be computed using the customary short rate table, subject to the Minimum Earned Premium at Inception shown in Item 5. C. of the Declarations, whichever is greater.

The **Company** may cancel this policy by written notice to the **Named Insured**, at the address last known to the **Company**. The **Company** will provide written notice at least thirty (30) days before cancellation is to be effective.

However, the **Named Insured** will only be entitled to ten (10) day's notice if the **Company** cancels because:

1. the Insured has failed ( .y a premium when due; or

2. the Insured has failed to pay applicable deductible amounts due.

If the **Company** cancels, earned premium will be computed pro-rata, unless the **Company** cancels for the reason specified in subsections 1. or 2., above, in which case earned premium will be computed using the customary short rate table, subject to the Minimum Earned Premium at Inception shown in Item 5. C. of the Declarations, whichever is greater.

The mailing of any notice of cancellation shall be sufficient proof of notice.

The effective date of cancellation terminates the **Policy Period**. Return of unearned premium is not a condition of cancellation. The **Company** will return unearned premium subject to the Minimum Earned Premium at Inception shown in Item 5. C. of the Declarations in due course.

## I. SOLE AGENT

The **Named Insured** shall act on behalf of all other **Insureds**, if any, for the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this policy, and giving and receiving notice of cancellation or non-renewal.

## J. BANKRUPTCY

The bankruptcy, receivership or insolvency of an **Insured** or the **Insured's** estate or of any insurer shall not relieve the **Company** of any of its obligations under this policy. However, such bankruptcy, receivership or insolvency shall in no way increase the **Company's** liability under this policy nor will this insurance apply to liability directly or indirectly due to bankruptcy, insolvency, receivership, or subsequent liquidation.

## K. APPLICATION

The statements in the application are the **Insured's** representations and are deemed material. This policy is issued based upon the truth and accuracy of such representations. Upon the binding of coverage, the application, incorporated herein by reference, shall become part of this policy. This policy embodies all agreements existing between the **Insured** and the **Company** or any of its representatives relating to this policy.

## L. PREMIUM and AUDIT

a. All premiums for this policy will be computed in accordance with the **Company's** rules and rates.

b. If the premium for this policy is a flat premium, it is not subject to adjustment, except that additional premium may be required for any additional exposures and/or **Insureds** or as provided for in SECTION V. H. CANCELLATION.

   The premium shown as the Total Advance Premium in Item 5. A. of the Declarations is a deposit premium only. If the policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Total Advance Premium, the **Named Insured** will pay the difference to the **Company**, due and payable upon notice.

c. The **Named Insured** must keep records of the information needed by the **Company** for premium computation, and send copies to the **Company** as requested. The **Named Insured** is responsible for the payment of all premiums and will be the payee for any return premiums from the **Company**.

d. The **Company** may examine and audit the **Insured's** books and records at any time during the **Policy Period** and within three (3) years after the end of the **Policy Period**, as far as they relate to this policy.

## M. ACTION AGAINST THE COMPANY

No person or organization has a right under this policy to sue the **Company** or to join the **Company** as a party or otherwise bring the **Company** into a suit seeking **Damages** against an **Insured**, unless:

1. all the terms and conditions of this policy have been fully complied with; and

2. the amount of such Da( )es have been fixed or rendered certain; (

   a. by final judgment against the **Insured** after trial of the issues; or

   b. the time to appeal such judgment has expired without an appeal being taken; or

   c. if appeal is taken, after the appeal has been determined; or

   d. by an agreed settlement in accordance with the terms and conditions of this policy. An agreed settlement means a settlement and release of liability executed by the claimant or the claimant's legal representative, and the **Insured**, with the written consent of the **Company**.

## N. FALSE OR FRAUDULENT CLAIMS

If the **Insured** reports any **Claim** knowing such **Claim** to be false or fraudulent, this policy shall become void and all insurance coverage hereunder shall be forfeited.

## O. ACQUISITIONS, MERGERS AND MATERIAL CHANGES

In the event that the **Named Insured** (i) acquires any other entity or acquires substantially all the assets of another entity, or (ii) merges with another entity such that the **Named Insured** is the surviving entity, or (iii) creates or acquires a **Subsidiary** or (iv) in the sole judgment of the **Company** materially changes its business as described in the Application after the effective date of this policy, no coverage shall be afforded under this policy for assets acquired, or the entity merged with, or the **Subsidiary** or such changed business activities, unless and until:

1. The **Named Insured** provides written notice of such transaction or event or change to the **Company** not more than sixty (60) days after the effective date of such transaction, or event or change, and

2. The **Named Insured** promptly provides the **Company** with such information in connection therewith as the **Company** may deem necessary, and

3. The **Named Insured** accepts any special terms, conditions, exclusions, or additional premium charge required by the **Company**, and

4. The **Company** at its sole discretion specifically agrees in writing to provide such coverage.

If the **Company** agrees to provide coverage, it will not include any **Breach of Professional Duty** committed or allegedly committed, with respect to any entity, assets, **Subsidiary**, or changed business activities referred to in subsection 1 above, prior to the effective date of such acquisition, merger, creation, or change, or any **Breach of Professional Duty** or interrelated **Breaches of Professional Duty** committed or allegedly committed prior to the effective date of such acquisition, merger, creation, or change.

If (i) the **Named Insured** merges into or consolidates with another entity, or (ii) another entity or person or group of entities and/or persons in concert acquire securities or voting rights which result in ownership or voting control by the other entity or person(s) of more than 50% of the outstanding securities representing the present right to vote for election of directors of the **Named Insured**, coverage under this policy shall continue until termination of this policy, but only with respect to **Claims** for **Breach of Professional Duty** committed, attempted, or allegedly committed by the **Insureds** prior to such merger, consolidation or acquisition. The **Named Insured** shall give written notice of such merger, consolidation or acquisition as soon as practicable, together with such information as the **Company** may require.

For purposes of this Condition, an entity shall mean any corporation, business trust, partnership, or other form of organization, including a **Named Insured**.

## P. SERVICE OF SUIT

In the event of failure of the **Company** to pay any amount claimed to be due hereunder, the **Company**, at the request of the **Insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this Condition constitutes or should be understood to constitute a waiver of the **Company's** rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, Massachusetts, 02110 or his or her representative, and that in any suit instituted against the **Company** upon this policy, the **Company** will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any state, of any state, territory, or district of the United States which makes provision therefor, the **Company** hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the **Insured** or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to send such process or a true copy thereof.

## Q. ARBITRATION

Notwithstanding the Service of Suit Condition above, in the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) arbitrators, consisting of two (2) party-nominated (non-impartial) arbitrators and a third (impartial) arbitrator (hereinafter "umpire") as the sole and exclusive remedy.

The party desiring arbitration of a dispute shall notify in writing the other party, said notice including the name, address and occupation of the arbitrator nominated by the demanding party. The other party shall, within 30 days following receipt of the demand, notify in writing the demanding party of the name, address and occupation of the arbitrator nominated by it. The two (2) arbitrators so selected shall, within 30 days of the appointment of the second arbitrator, select an umpire. If the arbitrators are unable to agree upon an umpire, each arbitrator shall submit to the other arbitrator a list of three (3) proposed individuals, from which list such arbitrator shall choose one (1) individual. The names of the two (2) individuals so chosen shall be subject to a draw, whereby the individual drawn shall serve as umpire.

The parties shall submit their cases to the panel by written and oral evidence at a hearing. Said hearings shall be held within thirty (30) days of the selection of the umpire unless otherwise agreed by a majority of the panel. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud or gross misconduct by the arbitrators. The award will be issued within 30 days of the close of the hearings. Each party shall bear the expenses of its designated arbitrator and shall jointly share with the other the expense of the umpire and of the arbitration proceeding.

The arbitration proceeding shall take place in or in the vicinity of Boston, Massachusetts. The procedural rules applicable to this arbitration, shall, except as provided otherwise herein, be in accordance with the Commercial Rules of the American Arbitration Association.

**IN WITNESS WHEREOF**, the **Company** has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in the Declarations by one of its duly authorized representatives.

*Elizabeth M. Tuck*

**Secretary**

*Shan E Kelly*

**President**

**This endorsement, effective 12:01 AM 12/17/2007**

**Forms a part of policy no.:** 1156880

**Issued to:** GMP ASSOCIATES, INC.

**By:** LEXINGTON INSURANCE COMPANY

### COVERAGE TERRITORY LIMITATION ENDORSEMENT

This endorsement modifies insurance provided by the policy:

If coverage for a claim or suit under this policy is in violation of any United States of America's economic or trade sanctions, laws, or regulations, including, but not limited to, sanctions, laws, and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") then coverage for that claim or suit shall be null and void.

All other terms and conditions of the policy remain the same.

_____
**Authorized Representative OR
Countersignature (in states where applicable)**

This endorsement, effective 12:01 AM 12/17/2007

Forms a part of policy no.: 1156880

Issued to: GMP ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

## PATROL® ACCESS ENDORSEMENT

This endorsement modifies insurance provided by the policy:

The Insurer provides the Named Insured with access during the policy period to AIG Consultants, Inc.'s Planning and Tracking Response Online (PATROL®) Program through PATROL's® website (https://www.aigpatrol.com). The PATROL® Program is a crisis management solution that provides the Named Insured with access to a global network of leading providers of crisis preparation and response services. The Named Insured can view online information about each service provider including company description, brochures, links, white papers, and press releases as well as complete and submit an online Request for Proposal (RFP) or a Work Order for Services. If the service providers response meets the Named Insured's criteria then the two companies can enter into an agreement for services.

The following services provider categories are available through PATROL®: Business Continuity/Disaster Recovery Planning, Workplace Violence, Public Relations, Employee Inventory, Threat & Vulnerability Assessment, Incident/Evacuation Drills, Incident Command, Sabotage & Terrorism, Chemical/ Bioterrorism, Insurance Products, Event Management Software, Pollution, Kidnap & Ransom, Background Checks, Natural Disasters, Medical/Political Evacuation, Cyberterrorism, Executive/VIP Protection, Investigations, Physical Security, and Business Intelligence.

The above referenced services are provided at no cost to the Named Insured and no premium has been allocated for these services. As such, the Insurer reserves the right to change or discontinue these services at the Insurer's sole discretion and without notice to the Named Insured.

All other terms and conditions of the policy remain the same.

**Authorized Representative OR**
**Countersignature (In states where applicable)**

LX8031 (01/07)

This endorsement, effective 12:01 AM 12/17/2007

Forms a part of policy no.: 1156880

Issued to: GMP ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

## MINIMUM EARNED PREMIUM

It is understood and agreed that in the event of cancellation of this policy by or at the direction of the Insured, the Company shall retain a Minimum Earned Premium of $30,564.

It is further agreed that the provision regarding cancellation by the Insured is amended to read:

"If the Insured cancels this policy, earned premium will be computed in accordance with the customary short-rate table and procedure, or the Minimum Earned Premium stated herein, whichever is greater".

Authorized Representative OR
Countersignature (In states where applicable)

LEXCME077(Ed.03/86)
LX0082

This endorsement, effective 12:01 AM 12/17/2007

Forms a part of policy no.: 1156880

Issued to: GMP ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

## NAMED INSURED AMENDMENT

In consideration of the premium charged, it is understood and agreed that Item 1 of the Policy Declarations -- Named Insured -- is amended to read as follows:

GMP ASSOCIATES, INC.

GMP HAWAII, INC.

GMP GUAM, INC.

GMP INTERNATIONAL, INC.

**Authorized Representative OR
Countersignature (in states where applicable)**

NAMEINSD (Ed. 02/94)
LX6184                                    Page 1 of 1

This endorsement, effective 12:01 AM 12/17/2007

Forms a part of policy no.: 1156880

Issued to: GMP ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

**THIS ENDORSEMENT ADDS ACCIDENT INSURANCE TO THE POLICY UNDER THE TERMS AND CONDITIONS STATED HEREIN, PLEASE READ IT CAREFULLY.**

**ACCIDENT INSURANCE ENDORSEMENT**

**NOTICE: THIS ENDORSEMENT PROVIDES ACCIDENT ONLY COVERAGE. IT DOES NOT COVER SICKNESS OR DISEASE.**

**NOTICE: COVERAGE IS NOT PROVIDED TO ANY OTHERWISE ELIGIBLE PERSON IF THE NAMED INSURED IS DOMICILED IN INDIANA, IOWA, MASSACHUSETTS, MISSOURI, NORTH CAROLINA, PENNSYLVANIA, OR RHODE ISLAND.**

The words **we, us** and **our,** refer to the company providing this insurance as stated above. Other words and phrases that appear in bold face print in this endorsement have special meaning within this endorsement. Refer to the Accident Insurance Declarations and Accident Insurance Definitions below.

The Policy is amended as follows:

I. **ACCIDENT INSURANCE DECLARATIONS** - The following declarations are added to the Policy and apply only with respect to the coverage provided by this endorsement:

  (a) **Accident Insurance Effective Date:** "Same as Policy Effective Date "

  (b) **Classification of Eligible Persons:**

    **Class 1:** All third parties, excluding Class 2. Class 1 does not include firefighters, police officers, emergency medical technicians or any other emergency services personnel who may be called to the venue or location(s) in the event of an emergency. Additionally, **Class 1** does not include prisoners, inmates or detainees of any kind when the Covered Premises is a prison, jail, detention center, lock down facility or any other correctional institution of any kind.

    **Class 2:** All employees of the **Named Insured** working at least 20 hours per week and who are permanently employed inside the U.S., its territories and possessions, Puerto Rico and Canada.

  (c) **Covered Activity(ies):** Coverage is provided for **Injury** sustained by a **Covered Person** while:

  **Covered Activity 1: (Class 1)** Lawfully in or on the **Covered Premises** of the **Named Insured.**

  **Covered Activity 2: (Class 2)** Actively performing the duties of his or her occupation for the **Named Insured.**

  (d) **Principal Sum Amount** (per **Covered Person**): $50,000

  (e) **Accident Insurance Aggregate Limit:** $5,000,000 per occurrence

II. **ACCIDENT INSURANCE** - The following Accident Insurance Coverage is added to the Policy. The provisions hereunder apply only with respect to the Accident Insurance provided by this endorsement:

## A. ACCIDENT INSURANCE ~~URING~~ AGREEMENT

We will pay a benefit to the **Covered Person** (or, in the event of death, to the **Covered Person's** beneficiary) if that **Covered Person** suffers a loss covered under this endorsement arising from an **Injury** that results from an accident that occurs on or after the **Accident Insurance Effective Date** and during a **Covered Activity**. The **Principal Sum Amount** and the **Covered Activity(ies)** applicable to each **Covered Person** are set out in the **Schedule**. The benefit amount payable is subject to the Accident Insurance Reduction Schedule found below.

**Accidental Death & Dismemberment and Paralysis Benefit.** If Injury to a **Covered Person** results, within 365 days of the date of the accident that caused the **Injury**, in that **Covered Person** suffering any one of the losses or any type of paralysis specified below, the benefit we will pay will be based upon the indicated percentage of the **Principal Sum Amount** shown below for that loss or paralysis:

| For Loss of: | Percentage of Principal Sum Amount Payable |
|---|---|
| Life | 100% |
| Both Hands or Both Feet | 100% |
| Sight of Both Eyes | 100% |
| One Hand and One Foot | 100% |
| One Hand and the Sight of One Eye | 100% |
| One Foot and the Sight of One Eye | 100% |
| Speech and Hearing in Both Ears | 100% |
| One Hand or One Foot | 50% |
| Sight of One Eye | 50% |
| Speech or Hearing in Both Ears | 50% |
| Hearing in One Ear | 25% |
| Thumb and Index Finger of Same Hand | 25% |
| **Quadriplegia** | 100% |
| **Paraplegia** | 50% |
| **Hemiplegia** | 25% |

Loss of a hand or foot means complete severance through or above the wrist or ankle joint. Loss of sight of an eye means total and irrecoverable loss of the entire sight in that eye. Loss of hearing in an ear means total and irrecoverable loss of the entire ability to hear in that ear. Loss of speech means total and irrecoverable loss of the entire ability to speak. Loss of thumb and index finger means complete severance through or above the metacarpophalangeal joint of both digits.

If more than one loss or paralysis is sustained by a **Covered Person** as a result of the same accident, only one amount, the largest, will be paid.

## B. ACCIDENT INSURANCE EXCLUSIONS

No coverage shall be provided under this endorsement and no payment shall be made for any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following excluded risks even if the proximate or precipitating cause of the loss is an accidental bodily injury:

1. suicide or any attempt at suicide or intentionally self-inflicted Injury or any attempt at intentionally self-inflicted Injury or any act of autoeroticism.

2. sickness or disease, or mental incapacity or bodily infirmity whether the loss results directly or indirectly from any of these.

3. the **Covered Person's** commission of or attempt to commit a crime.

4. declared or undeclared war, or any act of declared or undeclared war regardless of whether the Policy to which this endorsement is attached provides such coverage.

5. infections of any kind regardless of how contracted, except bacterial infections that are directly caused by botulism, ptomaine poisoning or an accidental cut or wound independent and in the absence of any underlying sickness, disease or condition including but not limited to diabetes.

6. participation in any te( port or any other athletic activity. (

7. full-time active duty in the armed forces, National Guard or organized reserve corps of any country or international authority. (Loss caused while on short-term National Guard or reserve duty for regularly scheduled training purposes is not excluded).

8. travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, if the **Covered Person** is:

   a) riding as a passenger in any aircraft not intended or licensed for the transportation of passengers; or

   b) performing, learning to perform or instructing others to perform as a pilot or crew member of any aircraft; or

   c) riding as a passenger in an aircraft owned, leased or operated by the **Named Insured** or the **Covered Person's** employer.

9. the **Covered Person** being under the influence of intoxicants.

10. the **Covered Person** being under the influence of drugs unless taken under the advice of and as specified by a **Physician**.

11. the medical or surgical treatment of sickness, disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from the treatment.

12. stroke or cerebrovascular accident or event; cardiovascular accident or event; myocardial infarction or heart attack; coronary thrombosis; aneurysm.

13. the **Covered Person** riding in or driving any type of motor vehicle as part of a speed contest or scheduled race, including testing such vehicle on a track, speedway or proving ground.

## C. ACCIDENT INSURANCE LIMITATIONS

**Accident Insurance Aggregate Limit** - The maximum amount payable under the Accidental Death & Dismemberment and Paralysis Benefit may be reduced if more than one **Covered Person** suffers a loss or paralysis as a result of the same occurrence. The maximum amount payable for all such losses and types of paralysis for all **Covered Persons** will not exceed the amount shown as the **Accident Insurance Aggregate Limit** in the Schedule. If the combined maximum amount otherwise payable for all **Covered Persons** must be reduced to comply with this provision, the reduction will be taken by applying the same percentage of reduction to the individual maximum amount otherwise payable for each **Covered Person** for all such losses and types of paralysis. The **Accident Insurance Aggregate Limit** is in addition to the Policy's General Aggregate Limit.

**Accident Insurance Reduction Schedule** - The amount payable for a loss will be reduced if a **Covered Person** is age 70 or older on the date of the accident causing the loss. The amount payable for that **Covered Person's** loss is a percentage of the amount that would otherwise be payable, according to the following schedule:

| AGE ON DATE OF ACCIDENT | PERCENTAGE OF AMOUNT OTHERWISE PAYABLE |
|---|---|
| 70-74 | 65% |
| 75-79 | 45% |
| 80-84 | 30% |
| 85 and older | 15% |

Premium for a **Covered Person** age 70 or older is based on 100% of the coverage that would be in effect if the **Covered Person** were under age 70.

"Age" as used above refers to the age of the **Covered Person** on the **Covered Person's** most recent birthday, regardless of the actual time of birth.

## D. ACCIDENT INSURANCE DEFINITIONS

**Covered Activity(ies)** - means those activities set out as **Covered Activity(ies)** in the **Schedule** with respect to which **Covered Persons** are provided coverage under this endorsement.

**Covered Person** means a person: (1) who is a member of an eligible class of persons as described in the Classification of Eligible Persons section of the Schedule; and (2) while such person's coverage under this endorsement is in force.

**Covered Premises** - means the physical building location of all premises owned by, rented to, or leased by the **Named Insured** located inside the U.S., its territories and possessions, Puerto Rico and Canada (including parking lots next to buildings that are maintained by the **Named Insured**). Covered Premises does not include any vehicle or mode of transportation once it has left the premises of the **Named Insured**. For construction "wrap-up" business Covered Premises is deemed to be the physical project worksite locations(s) in the policy during the project term.

**Named Insured** - means the Named Insured shown in the Declarations of the Policy to which this endorsement is attached.

**Hemiplegia** - means the complete and irreversible paralysis of the upper and lower **Limbs** of the same side of the body.

**Immediate Family Member** means a person who is related to the **Covered Person** in any of the following ways: spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), brother or sister (includes stepbrother or stepsister), or child (includes legally adopted or stepchild).

**Injury** - means an injury to the body: (1) which is sustained as a direct result of an unintended, unanticipated accident that is external to the body and that occurs while the injured person's accident coverage is in force; (2) which occurs under the circumstances described in a **Covered Activity** applicable to that person; and (3) which directly (independent of sickness, disease, mental incapacity, bodily infirmity or any other cause) causes a covered loss under this endorsement.

**Limb** - means entire arm or entire leg.

**Paraplegia** - means the complete and irreversible paralysis of both lower **Limbs**.

**Physician** means a licensed practitioner of the healing arts acting within the scope of his or her license who is not: (1) the **Covered Person**; (2) an **Immediate Family Member**; or (3) retained by the **Named Insured**.

**Quadriplegia** - means the complete and irreversible paralysis of both upper and both lower **Limbs**.

**Schedule** - means the Accident Insurance Declarations section of this endorsement.

## E. ACCIDENT INSURANCE CLAIMS PROVISIONS

**Notice of Claim.** Written notice of a claim for benefits must be given to us within 20 days after a **Covered Person's** loss, or as soon thereafter as reasonably possible. Such written notice given by or on behalf of the claimant to us in care of AIG Claim Services, P.O. Box 15701, Wilmington, DE 19850-5701, or by calling 1-800-551-0824 with information sufficient to identify the **Covered Person**, is deemed notice to us.

**Claim Forms.** We will send claim forms to the claimant upon receipt of a written notice of claim. If such forms are not sent within 15 days after the giving of notice of a claim, the claimant will be deemed to have met the proof of loss requirements upon submitting, within the time fixed herein for filing proof of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made. The notice should include the **Covered Person's** name, the **Named Insured's** name and the Policy number .

**Proof of Loss.** Written proof of loss must be furnished to us within 90 days after the date of the loss. Failure to furnish proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

**Payment of Claims.** Upon receipt of due written proof of death, payment for loss of life of a **Covered Person** will be made, in equal shares, to the survivors in the first surviving class of those that follow: the **Covered Person's** (1) spouse; (2) children; (3) parents; or (4) brothers and sisters. If no class has a survivor, the beneficiary is the **Covered Person's** estate.

Upon receipt of due written proof of loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) the **Covered Person** suffering the loss. If a **Covered Person** dies before all payments due have been made, the amount still payable will be paid as described above for loss of life:

If any payee is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the payee's property. If the payee has no legal guardian for his or her property, a payment not exceeding $1,000 may be made, at our option, to any relative by blood or connection by marriage of the payee, who, in our opinion, has assumed the custody and support of the minor or responsibility for the incompetent person's affairs.

Any payment we make in good faith fully discharges our liability to the extent of the payment made.

**Time of Payment of Claims.** Benefits payable for any loss will be paid immediately upon receipt of such proof.

**Physical Examination and Autopsy.** We at our own expense have the right and opportunity to examine the person of any individual whose loss is the basis of claim hereunder when and as often as we may reasonably require during the pendency of the claim and to make an autopsy in case of death where it is not forbidden by law.

## F. ACCIDENT INSURANCE ADDITIONAL PROVISIONS

**Accident Insurance Termination Date.** This coverage terminates automatically on the date the Policy terminates. Termination takes effect at 12:01 AM Standard Time at the address of the **Named Insured** on the date of termination.

**Covered Person's Effective Date.** A **Covered Person's** coverage under this endorsement begins on the latest of: (1) the **Accident Insurance Effective Date**; (2) the date the person becomes a member of an eligible class of persons as described in the **Classification of Eligible Persons** section of the **Schedule**; or (3) the date the appropriate premium is paid for the **Covered Person**.

**Covered Person Termination Date.** A **Covered Person's** coverage under this endorsement ends on the earliest of: (1) the date the Policy is terminated; (2) the date this endorsement is terminated; or (3) the date the **Covered Person** ceases to be a member of any eligible class of persons as described in the **Classification of Eligible Persons** section of the **Schedule**.

Termination of coverage will not affect a claim for a covered loss that occurred while the **Covered Person's** coverage under this endorsement was in force.

**All other terms, conditions, and exclusions of the Policy shall remain unchanged.**

**Authorized Representative OR
Countersignature (in states where applicable)**

This endorsement, effective 12:01 AM 12/17/2007

Forms a part of policy no.: 1156880

Issued to: GMP ASSOCIATES, INC.

By: LEXINGTON INSURANCE COMPANY

## LEXINGTON INSURANCE COMPANY ARCHITECTS & ENGINEER'S PROFESSIONAL LIABILITY RISK MANAGEMENT SERVICES

This endorsement modifies insurance provided by the policy:

The Insurer provides the Named Insured with access during the **Policy Period** to Lexington Insurance Company's Architects and Engineers Professional Liability Risk Management Services. The Named Insured may access these services, as needed, at no additional cost.

Lexington Insurance Company's Architects and Engineers Professional Liability Risk Management Services are unique value-added services. A complete description of these services can be found on Lexington's A&E website www.lexaehelp.com.

A summary of the services (which include services provided by the Boston law firm of Donovan Hatem, LLP) are listed below:

**Contract Review** - Donovan Hatem provides certain contract review services consisting of review and evaluation of contracts and related materials generally within a 48 hour turnaround period.

**Risk Management Seminars** - Donovan Hatem presents or participates in the presentation of Risk Management Seminars customized to the needs of design professional insureds.

**Pre-Claim Prevention Services** - Donovan Hatem provides pre-claim or loss prevention advice to design professional insureds regarding issues, problems, or concerns which might have professional liability implications.

**Claims Management Services** - Lexington's experienced A&E claims personnel partner Donovan Hatem provide quality claims investigation and management services on behalf of design professional insureds including advice and recommendations to the insureds and their defense counsel.

**Website** - Lexington has created a state of the art website exclusively for our design professional insureds. The www.lexaehelp.com website contains video seminars (eligible for CEU credits), contract guidelines, newsletters, and state by state legal issues summaries. These are just some of the materials included on this website.

The above referenced services are provided at no cost to the Named Insured and no premium has been allocated for these services. As such, the Insurer reserves the right to change or discontinue these services at the Insurer's sole discretion and without notice to the Named Insured.

All other terms and conditions of the policy remain the same.

**Authorized Representative OR
Countersignature (in states where applicable)**

LX9925 (04/06)